Herman J. Meyer v. Adolph Michaels; William R. Learn, Intervener.[*]

Filed May 20, 1903.   No. 11,286.

1, **Chattel Mortgage:** Possession by Mortgagee. The discretion conferred upon the mortgagee by a clause in a chattel mortgage, authorizing him to take possession of the mortgaged property whenever he may deem himself unsafe or insecure, is not to be exercised arbitrarily; such belief must rest on reasonable grounds.

2. ———: ———. The facts that would warrant such belief must be such as did not exist, or of which the mortgagee was ignorant, at the time of taking the mortgage.

3. **Levy:** Abandonment. When an officer effects a valid levy on personal property consisting of ponderous articles, the fact that he leaves such property on the premises of the debtor, in charge of a custodian, who is in the employ of the debtor, and who permits the debtor to use such property, does not constitute an abandonment of the levy as to the debtor and those having notice.

4. **Mortgage by Partnership.** Where a chattel mortgage is signed by one member of the firm, without authority and without the knowledge or consent of his partner or the mortgagee, and delivered to a third .party to be delivered to the mortgagee, and the mortgagee upon learning of such mortgage takes time to decide whether to accept and does not accept it until after a dissolution of the firm and until after he had notice of such dissolution, such mortgage is not binding on the partner not joining therein.

5. **Replevin:** Instruction. In an action of replevin, where one of the parties claims the property by virtue of a levy thereon by him as an officer, it is not error to direct the jury, in case they find for him, to find the fair, reasonable and market value of such property, without at the same time directing the attention of the jury to the manner in which said property must be sold by the officer, and his want of discretion, possesed by other owners of goods, to accept or reject such offers as are not considered a fair equivalent for them.

[*] Rehearing allowed.   See opinion, p. 151, *post.*

6. ———: ABANDONMENT. If the plaintiff in replevin to whom the property has been delivered may, under any circumstances, show that, subsequent to the delivery, the property has been·taken from him under an execution against the defendant in the action, he can not do so without at the same time abandoning any claim of his own to the property and consenting that it may be applied in satisfaction of the judgment on which the execution against the defendant issued.

ERROR to the district court for Douglas county: WILLIAM W. KEYSOR, DISTRICT JUDGE. *Affirmed.*

*Crane & Crane* and *L. D. Holmes,* for plaintiff·in error.

*Edmund G. McGilton, Richard S. Horton* and *James McCabe, contra.*

DUFFIE, C.

This is an action in replevin brought by · Herman J. Meyer against Adolph Michaels for the possession of a certain stock of goods and trade fixtures. William R. Learn intervened, claiming a portion of the property as against both the other parties. There was a verdict for the intervener for that portion of the property claimed by him, and for the defendant for the remainder. From a judgment rendered thereon the plaintiff prosecutes error to this court.

To a proper understanding of the questions hereinafter considered, a somewhat extended statement of the facts leading up·to this action is necessary. About the first day of May, 1896, the defendant and one Fred H. Meyer, a son of the plaintiff, formed a partnership to engage in the wholesale business of watch-makers' tools, supplies and materials and other goods, in the city of Omaha, under the firm name of Michaels & Fred H. Meyer. Of their capital $4,482 were borrowed and evidenced by twenty-four notes, each for $186.75, so arranged that one of the series fell due every sixty days. The notes were signed by the members of the firm as principals, and by the plaintiff as surety. On December 5, 1896, the principals on the notes signed

a note payable to the plaintiff for the amount then unpaid on the said series of notes, and at the same time signed a mortgage, purporting to secure such note, covering their stock and trade fixtures, ostensibly for the purpose of indemnifying the plaintiff against loss or damage by reason of his suretyship. Whether such note and mortgage were ever delivered was an issue in this case. They were, however, placed in the hands of a third party, then in the employ of the firm, for safe keeping. For some time they were thought to have been lost. On May 21, 1897, Fred H. Meyer, in the firm name, signed a note, payable in thirty days, to the plaintiff, for the amount then unpaid on the said series of notes, and a mortgage, purporting to secure such note, on the stock and trade fixtures of the firm. This note and mortgage were ostensibly given for the same purpose as the former note and mortgage. It is claimed by the plaintiff that this note and mortgage were given in the place and in renewal of the first note and mortgage, which was then believed to have been lost. This second note and mortgage were placed in the hands of Mr. Crane, an attorney, by Fred H. Meyer. On June 3 following, the firm of Michaels & Fred H. Meyer was dissolved, the junior member transferring his interest therein to the defendant. On learning of this second note and mortgage and that it contained a clause providing that it should not be filed for thirty days, the plaintiff hesitated to accept it, but finally decided to do so and it was delivered to him June 22, 1897. It is claimed by the defendant that this note and mortgage were signed and delivered without his knowledge or consent, and without authority on the part of his said partner to bind him thereby. At the time they were made, suits, aided by attachment, were pending against the firm, and some of the trade fixtures, covered by the mortgage, had been seized, under the writs issued in such suits, by the intervener as constable. The property thus seized was mostly ponderous articles which were not removed from the place of business of the firm, but were turned over by the intervener to a custodian, sworn by him, who receipted

therefor to the intervener. The custodian at the time was in the employ of the firm, and the firm continued to use the attached property in the course of business, as they had used it before the levy was made. This action was commenced on June 22, 1897, the day the last note and mortgage were delivered to the plaintiff. By his amended petition the plaintiff claims a right to the possession of the property in controversy, by virtue of said mortgage, which he alleges was given in place and in renewal of that given December 5, 1896; the intervener claims by virtue of the levies made by him.

It is conceded that neither the first note payable to the plaintiff nor that made May 21, 1897, were due at the commencement of this action. Plaintiff's right to possession of the property in controversy, under either or both mortgages, is based on a clause therein giving him the right of possession at any time he might deem himself unsafe or insecure. The court instructed the jury on the theory that there was no evidence that any facts or circumstances arose after the delivery of the second mortgage and before the commencement of this action, which would justify the plaintiff in taking possession of the property. In this state the discretion conferred by such clause may not be exercised arbitrarily. The mortgagee must have reasonable grounds for believing himself unsafe or insecure. *New-lean & Hourd v. Olson*, 22 Neb. 717; *Case Plow Works v. Marr*, 33 Neb. 215; *Rector-Wilhelmy Co. v. Nissen*, 35 Neb. 716. The grounds must be such as did not exist or were not known to the mortgagee at the time of taking the mortgage. *Roy v. Goings*, 96 Ill. 361; *Barrett v. Hart*, 42 Ohio St. 41. The instructions of the court in this case perhaps go a little further than the authorities warrant, in that they ignore the fact that certain conditions might have existed at the time the mortgage was given, which, coming to the knowledge of the mortgagee for the first time after taking the mortgage, would justly cause him to feel unsafe and insecure and would entitle him to the possession of the property. The second mortgage was signed May 21, 1897;

the evidence is conclusive that it was not accepted by the mortgagee until June 22 of the same year, the day on which this suit was commenced. It is not shown in evidence that any fact or circumstance arose or came to the knowledge of the plaintiff between the time of his acceptance of the mortgage and the commencement of this suit, that would justify the seizure of the property under the unsafe or insecure clause. All the facts and circumstances that would justify a feeling of unsafety or insecurity on his part, existed and were known to him at the time he accepted the mortgage. Hence, if there be error in this regard it is error without prejudice.

There is evidence tending to show that at the time the plaintiff became surety on the notes of the firm, it was agreed between him and the principals that they would indemnify him by security on the stock. The plaintiff contends that this agreement was in effect a verbal chattel mortgage and that the plaintiff would be entitled to possession thereunder, if for any reason the written chattel mortgages were invalid. A sufficient answer to this contention is that the plaintiff bases his right of recovery on the written instruments. We discover no allegation that he claimed the right to the possession of the property by virtue of any verbal mortgage. Consequently, it was not error for the court to ignore that theory of the case.

Complaint is made that the court in effect directed a finding in favor of the intervener for the goods claimed by him by virtue of his levy of the writs of attachment thereon, thus ignoring plaintiff's theory that there had been an abandonment of such levies. The record of the attachment cases, including the officer's return, were introduced in evidence. They show a valid levy. The other evidence in the case on that point is to the effect that the intervener after making the levy appointed a third party custodian of the property, which consisted of ponderous articles, and they were left in the place of business of the defendants in the attachment case and were used by the firm as before the levy. We do not think these facts show abandonment

of the levy as between the parties to this suit. A different question might arise were this an action brought by a *bona fide* purchaser or creditor of the defendants in the attachment case, without notice. The levy was good as to such defendants and as to all other persons having notice thereof at least, and the court properly directed a finding for the intervener on that point. *Corniff v. Cook,* 95 Ga. 61, 51 Am. St. Rep. 55.

Another ground of complaint urged by the plaintiff is that the court erred in giving an instruction based on the theory that there was evidence tending to show that the plaintiff had knowledge of the dissolution of the firm of Michaels & Fred H. Meyer, at the time he accepted the second mortgage. A sufficient answer to this complaint is that there is ample evidence to warrant the court in instructing upon that theory. In fact, that he had such knowledge at the time he accepted the second mortgage is practically admitted by the plaintiff in his testimony.

The plaintiff complains of another instruction because it does not cover the hypothesis, that the second mortgage was delivered to Mr. Crane by Fred H. Meyer, who professed to have made it on behalf of the firm for the plaintiff. It is insisted that, if the mortgage was so delivered to Mr. Crane, such delivery was in effect a delivery to the plaintiff on the date thereof, namely, May 21, 1897, although it was not actually delivered to him until June 22, thereafter, and, as it is conceded that the firm was not dissolved until about June 3, 1897, the mortgage was the deed of the firm. There is one fact which stands in the way of this theory and that is the plaintiff did not accept the mortgage until after the dissolution of the firm. It is a trite saying, that it takes two to make a bargain. On learning that such mortgage had been made the plaintiff wanted time to think it over before accepting it, and took such time. Until he accepted it, it was not a binding contract. When he finally elected to accept it, the firm was out of existence and the parties constituting it shorn of their power to bind each other. If the mortgage in the first

instance was made by one partner without the knowledge or consent of the other, the defendant in this case, and was not accepted until after the firm was dissolved and until after the plaintiff knew of such dissolution, and it was then delivered to him without the knowledge or consent of the defendant, such mortgage was not an obligation of the firm and was not binding on the defendant.

Complaint is made of the following instruction which was given by the court at the request of the defendant:

"The jury are instructed that the testimony of plaintiff's witnesses is to the effect that the mortgage of December 5, 1896, and that of May 21, 1897, were each executed to secure the plaintiff as to the indebtedness to the Omaha National Bank, on which Mr. Meyer was surety, and that Mr. Meyer was aware of this.

"If these mortgages were tendered to plaintiff as security only, he would be bound to accept them as such or not at all. Should you find that these mortgages or either of them were accepted by plaintiff with intent to claim them, or either of them, to evidence absolute indebtedness and to enforce that claim by foreclosure, acceptance with such intent would not be an acceptance of the mortgage as tendered, and without such acceptance the mortgage is invalid."

The specific objection to this instruction is, that it is not based on the evidence. We have examined the evidence and the record with some care and are satisfied that there is sufficient evidence to warrant the submission of the question involved in the foregoing instruction to the jury.

Another ground of complaint is that the court directed the jury, in effect, that in case they found for the intervener they should find the fair, reasonable, market value of the property claimed by him, and if they found for the defendant also, they should find the fair, reasonable, market value of the remainder of the property in controversy. As to the property claimed by the defendant and not seized under the writs of attachment, the instruction as to its value is proper. *Baum Iron Co. v. Union Savings*

*Bank,* 50 Neb. 387. As to the intervener, his right to the possession of the property claimed by him was based on his levy thereon as constable. As was said in *Merchants Nat. Bank v. McDonald,* 63 Neb. 363:

"The true inquiry in such case is what the value of the goods was at the time of the taking in the situation in which they then were, having a view to the manner in which the sheriff, if his possession had not been disturbed, would lawfully have disposed of them."

If the inquiry be confined to such limits, it follows irresistibly that the ultimate fact to be ascertained from such inquiry must be within the same limits. We can not presume that at a sale of goods under such circumstances they would bring their fair, reasonable, market value. It is the experience of all who have any connection with the forced sales of property, that the full market value thereof is rarely obtained. The officer must sell at a particular time and without the advantages possessed by the merchant to advertise and display his goods and to sell or not, as he thinks the price offered fair and reasonable or disproportionate to their value. These are matters which we think should have been called to the attention of the jury, and which it should have been directed to take into consideration in arriving at the damages sustained by the intervener, by being dispossessed of the goods. It follows, therefore, that the instruction complained of, so far as it relates to the property claimed by the intervener, was erroneous.

Complaint is also made of the following instruction given by the court on its own motion:

"In passing upon the value of the goods attached or replevied you are not conclusively bound by the opinions of witnesses in relation thereto and may reject the same if for good reason you see fit so to do. You are the judges of the value of said property, but you should take into consideration the opinions of the witnesses in connection with all the other evidence in the case and it should be viewed by you in the light of your experience and you should say from all the credible evidence what, in your business judg-

13

ment, was the fair and reasonable market value of said goods and chattels."

We do not think that this instruction is subject to the criticism made, that it authorizes the jury, if they see fit, to entirely disregard the opinion given by the witnesses relating to the value of the goods. On the contrary, it directs them to take into consideration the opinion of the witnesses in connection with all the other evidence in the case, but to view it in the light of their own experience. The rule is well established that triers of fact are not generally bound by evidence of value, even when it is not met by opposing proof. *Lincoln Land Co. v. Phelps County,* 59 Neb. 249. The instruction we think fairly reflects the law as announced in *Head v. Hargrave,* 15 Otto (U. S.) 45, and other cases relating to directions given to the jury in cases of this character.

There is evidence to the effect that the defendant was present at the sale made by the plaintiff under the foreclosure of the chattel mortgage, made no objection to the sale, and bid on some of the property offered for sale. Covering that branch of the testimony the plaintiff tendered the following instruction:

"The jury are further instructed that if they find from the evidence that Adolph Michaels, the defendant in this case, was present at the sale of the mortgaged property, upon advertisement for foreclosure under the mortgage dated the 21st day of May, 1897, and bid upon said property, and made no objection to the said sale, then you may take all such circumstances in consideration in weighing your evidence in this case. And if you believe from the evidence that the said Michaels, by his bid at said sale and by his other acts in connection therewith, ratified the validity of said mortgage, then you are warranted in finding that he is estopped from questioning its validity in this action, and you would be warranted in finding that the said mortgage is valid and binding as between the said Michaels and Fred H. Meyer, and the said Michaels, on the one part, and Herman J. Meyer, on the other part."

Its refusal is now assigned as error. This instruction is incomplete. Its manifest purpose was to submit to the jury the question of ratification, without defining what constitutes ratification.

Complaint is made of the refusal of the court to give the third, seventh and eleventh instructions asked by the plaintiff. The plaintiff sought by these instructions to submit, among other things, the validity of the lien claimed by the intervener. As stated in a former part of this opinion, the validity of such lien was conclusively established. The instructions were properly refused. Error is assigned on the refusal of the court to give certain other instructions asked by the plaintiff. They are voluminous and we are unable to discover any error in their refusal.

On the trial of the case the plaintiff offered to prove that a portion of the goods, taken under the writ in this case, had been subsequently levied upon under executions issued on judgments against Michaels & Fred H. Meyer, and that the officer making the levy took such property from the possession of the plaintiff who still retained possession thereof under such executions. The offer was refused and its refusal is now assigned as error. We think the weight of authority is to the effect, that in an action of trover the defendant may show in mitigation of damages that the goods had been appropriated under legal process issued against the plaintiff. *Irish v. Cloyes*, 8 Vt. 30, 30 Am. Dec. 446; *Pierce v. Benjamin*, 14 Pick. (Mass.) 356, 25 Am. Dec. 396; *Curtis v. Ward*, 20 Conn. 204; *Stewart v. Martin*, 16 Vt. 397; *Dodson v. Cooper*, 37 Kan. 346; *Watson v. Coburn*, 35 Neb. 492.

These cases establish the rule that when goods have been converted and the owner afterwards receives back the whole or a portion thereof or the proceeds arising from their sale, while he does not thereby bar his right of action for the original wrongful taking, such fact may nevertheless be shown in mitigation of damages. And it is urged in argument in this case that, if the goods taken by the plaintiff under his writ of replevin were afterwards levied

upon under the executions referred to, and held by the sheriff to satisfy an execution against Michaels, such fact would render the plaintiff unable to comply with any judgment that might be rendered against him for a return of the goods, and that no judgment for their value ought to be entered against him. The theory urged being that if the goods are applied for the benefit of the defendant in satisfaction of a judgment standing against him, it would be unjust and inequitable to allow him to recover the value of such goods from the plaintiff in the action, thus giving him double damages; first, by their being applied upon his judgment; and second, by taking a judgment against the plaintiff for their value.

No argument is needed to establish the injustice that would arise from such a proceeding, but it is not apparent that such a result would or could arise in this case from the failure of the court to receive the proof offered. The creditor who levied the executions upon this property was in privity with the defendant. He could obtain no title or right of possession under his executions, except such title and right of possession as the defendant then had, and it is clear that a defendant in replevin can not regain possession of the property taken from him, by causing another writ to be levied thereon while the replevin action is pending. In *Shull v. Barton,* 56 Neb. 716, 727, it is said:

"There is no conflict of authority upon the proposition that when property has been attached and then replevied, the plaintiff in the attachment, while the replevin suit is pending, can not levy an execution or attachment thereon. Indeed, some authorities go so far as to say that property attached and then replevied is in the custody of the law, and while the replevin action is pending can not be seized on attachment or execution at the suit of any person. *Bates County Nat. Bank v. Owen,* 79 Mo. 429. But every court to which the question has been presented, we think, has denied the right of a plaintiff who has attached property after it has been replevied from him and while the replevin action was pending, to levy another attachment or execution upon it."

In this condition of the law, the plaintiff might at any time reclaim possession of the property from the sheriff or recover its value to the extent of his interest therein. Without now saying whether the plaintiff could under any circumstances have the benefit of the proof offered, it is entirely clear that without going further than he did and embracing in his offer a willingness to relinquish all claim to the property, and to allow it to be applied in satisfaction of the executions against the defendant, the offer was inadmissible. The plaintiff evidently desired to occupy the very position which he urges as a reason for admitting this evidence against the defendant. He desires by this offer to avoid a judgment against him for the value of the property taken in case he failed in the action, while still retaining his right to proceed against the execution plaintiff to recover the property or its value. If he was willing that the property should be applied upon the defendant's judgment he should have relinquished all claim to it and abandoned any attempt to establish a right to its possession. He can not litigate with the defendant his right to the property, and at the same time assert that it has been appropriated by a third party, but to the use and benefit of the defendant.

Complaint is made of the ruling of the court in the admission of evidence, on behalf of the defendant, of certain transactions of third parties with Fred H. Meyer, wherein he obtained certain goods from such third parties, and of his conversation in regard thereto. Neither the transactions nor the conversations were brought home to the plaintiff. The evidence was not offered for the purpose of impeachment. It was irrelevant and served no legitimate purpose in the case. It tended to mislead and create prejudice, and should have been excluded. The admission of certain other testimony is complained of by the plaintiff but the complaint is unfounded. While other errors are assigned, most of them would involve a discussion of questions already considered, and none are so serious as to call for a reversal of the case.

While we can not say that we are entirely satisfied with the value of the goods as found by the jury, there is evidence amply sufficient to sustain the finding, and we can not interfere therewith.

For the error of the court in failing to fully instruct upon the value to be fixed upon the interest of the intervener in the goods claimed by him, the case should be reversed and remanded for another trial between the plaintiff and intervener, and the judgment in favor of the defendant in error against plaintiff in error should be affirmed and we so recommend.

By the Court: We are satisfied with the conclusion of the commissioner in regard to the judgment in favor of the defendant Michaels; but the reason given for reversing the judgment in favor of the defendant Learn is not satisfactory. It is true that the jury, in determining the value of the property replevied from the constable, should consider the manner in which the officer, if his possession had not been disturbed, would lawfully have disposed of the property, and should also have considered all other circumstances surrounding the transaction as disclosed by the evidence. It is proper in such cases that the court, in its instructions, should call the attention of the jury to their duty in that regard; but, since the fair, reasonable value of the property is the true measure of damages, and the circumstances referred to are to be considered for the purpose of determining what, in the particular case, was the fair, reasonable value of the property, we do not think that the instruction complained of can be said to be erroneous. If a more explicit and comprehensive instruction in regard to the method of arriving at the real value of the property at the time was desired by plaintiff, he should have presented such instruction to the court and can not now predicate error upon the failure of the court to so more explicitly instruct.

The case of *Merchants Nat. Bank v. McDonald*, 63 Neb. 364, is to be distinguished. It was tried to the court with-

out a jury. It was claimed that the damages allowed by the court were excessive, and it was plain from the evidence and the whole record that the court had disregarded the circumstances surrounding the transaction, and that the finding was not sufficiently supported by the evidence. The court when acting as a trier of fact should take the circumstances referred to into consideration in determining the true value of the property, and it appearing that this had not been done, the finding was set aside. There is no sufficient reason shown for reversing the judgment in favor of the defendant Learn.

The judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed December 16, 1903. *Judgment of affirmance adhered to. Remittitur ordered:*

PER CURIAM:

A resubmission and reconsideration of this cause upon oral arguments on the motion for a rehearing is productive of no different result or change of views from those heretofore expressed (*Meyer v. Michaels, ante,* p. 138), except with relation to the question of the alleged excessive verdict returned by the jury. Further examination of the record and consideration of this question convinces the court that the verdict is excessive and can not be upheld under the evidence as preserved by bill of exceptions. The value of the stock originally purchased, including fixtures, may fairly be said to be worth the sum paid; to wit, $5,482. New stock was purchased during the continuation of the business approximately of the value of $10,000, total $15,482. From this total stock, goods were sold in the ordinary course of trade for which were received, approximately, $15,000. In these receipts was included a profit of 30 per cent. thus making the cost of the goods sold amount to $11,538.46. Taking the value of the goods thus

sold from the value of the total stock as above found and the result is the value of the stock including fixtures at the time replevied, which equals $3,943.54. From this sum should be deducted the sum of $557.20, the value of the constable's interest and the remainder $3,386.34, with interest at the rate of 7 per cent. from the date of the replevin proceedings, represents the highest amount of recovery which the defendant is entitled to. The judgment of affirmance is vacated, as to defendant Michaels, and the judgment rendered in the court below in favor of defendant Michaels is reversed and the cause remanded, unless the said defendant Michaels shall, within twenty days from the rendition of this judgment, file a remittitur of the judgment recovered, of all thereof in excess of the said sum of $3,386.34 and also remit a proportional amount of the total sum assessed as damages for the unlawful taking and detention of the property replevied by the plaintiff. In the event the remittitur is filed within the time stated, the judgment of affirmance is adhered to.

AFFIRMED.