CREDIT BUREAU OF BROKEN BOW, INC., A CORPORATION, APPELLANT, v. JOHN V. MONINGER ET AL., APPELLEES.

284 N. W. 2d 855

Filed October 30, 1979. No. 42435.

Joseph E. Twidwell of Johnson, Spencer & Twidwell, for appellant.

Carlos E. Schaper, for appellee Broken Bow State Bank.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This is an appeal from an order of the District

Court for Custer County which affirmed a judgment entered by the county court of Custer County awarding the proceeds from a sheriff's sale of a 1975 Ford pickup truck to the Broken Bow State Bank (hereinafter referred to as Bank). We reverse and remand.

The facts which give rise to this action are not in dispute. The Credit Bureau of Broken Bow, Inc. (hereinafter referred to as Bureau) obtained a default judgment against John Moninger (hereinafter referred to as Moninger) in the amount of $1,518.27 on October 20, 1977. No appeal was taken from this judgment. On May 16, 1978, Moninger renewed his prior note to the Bank in the amount of $2,144.74. The renewed note was to be secured by a security agreement on feeder pigs and a 1975 Ford pickup owned by Moninger, but no security agreement was entered into at that time. On June 27, 1978, at the request of the Bureau, a writ of execution was issued on its judgment in the amount of $1,338.50, the balance remaining due on the judgment.

The deputy county sheriff who received the writ examined the motor vehicle title records on July 7, 1978, to determine if a lien existed as of that date on the pickup owned by Moninger. Finding no encumbrance of record, the deputy sheriff proceeded to Moninger's place of employment to levy on the vehicle. The deputy sheriff found Moninger, served him with a copy of the writ, and informed Moninger that he was executing on the pickup. Moninger testified he informed the officer that there was money borrowed from the Bank against the pickup, and that the Bank had title to the vehicle. Following this conversation, the officer proceeded to the vehicle, "grabbed ahold of the pickup," and stated: "I execute on the pickup for the County of Custer." The officer did not take possession of the vehicle at that time, nor did he ask for the keys to the vehicle.

On July 10, 1978, after being informed of the events

which occurred on the 7th, the Bank and Moninger executed a security agreement on the vehicle which was then filed. Notation of the security interest was made on the title to the pickup truck that same day. The vehicle was seized by deputy sheriffs on July 13, 1978, and sold at sheriff's sale on August 14, 1978, for $2,050.

The sheriff filed a motion in the county court for a determination of the division of the proceeds from the sheriff's sale. The Bank joined the action by application for the proceeds of the sheriff's sale, basing its claim on its alleged status as a secured creditor. Prior to a hearing on these matters, a stipulation was entered into by all parties whereby this dispute was limited to the distribution of the proceeds of the sheriff's sale, the pickup having previously been sold.

Hearing on the motion and the application was had on August 21, 1978. The county court orally ruled that the deputy sheriff had knowledge of the possible lien against the vehicle as of July 7, 1978; that such notice made any execution subject to the lien; that the vehicle was not ponderous and physical possession could have been taken by the officer; that the notice of the possible lien resulted in a valid lien in the Bank as of July 7, 1978; that the proceeds of the sheriff's sale should go to the Bank; and that the sheriff in making a levy "at that time" (July 7, 1978) used due care and acted properly as a stakeholder.

However, the written order entered by the county court differed in certain respects from the oral ruling at the hearing. By its written order, the county court found that the sheriff was a stakeholder; that a valid levy was not made on the vehicle until July 12, 1978; that the Bank's lien was perfected on July 10, 1978; that the sheriff had notice of the claim to a lien on July 7, 1978; that the knowledge of the sheriff was imputed to the Bureau; that the Bank's lien was prior to the Bureau's lien; and that the proceeds of

the sheriff's sale should be paid to the Bank.

An objection to the written order was filed on September 8, 1978, and hearing was held thereon, contesting the apparent discrepancies therein, particularly as to the date when levy was made on the vehicle. This objection was overruled. Appeal was had to the District Court assigning as error the finding of the county court with regard to the validity of the execution on July 7, 1978, and the failure of the county court to correct the purported conflict between the oral ruling and the written order. After reviewing the bill of exceptions from the county court, the District Court affirmed the judgment of the county court. This appeal followed.

The Bureau first assigns as error the ruling of the trial court which found the Bank's security interest in the vehicle to be superior to the execution lien of the Bureau. Specifically, the Bureau contends that the actions of the deputy sheriff on July 7, 1978, amounted to a valid levy which bound the vehicle for the satisfaction of the Bureau's judgment against Moninger. § 25-1504, R. R. S. 1943. On that date, the Bank held only an unperfected security interest in the vehicle. The Bureau contends that since the levy of execution made the Bureau a lien creditor, and since the lien creditor has an interest superior to that of an unperfected secured party, the trial court was in error in ruling that the Bank had a superior interest in the proceeds.

In effect, the Bureau is relying on section 9-301, U. C. C., which relates to the relative priorities as between unperfected security interests and lien creditors. "[A]n unperfected security interest is subordinate to the rights of * * * a person who becomes a lien creditor without knowledge of the security interest and before it is perfected." § 9-301 (1) (b), U. C. C. The correctness of the Bureau's position turns on two issues: (1) Whether the Bureau was in fact a lien creditor on July 7, 1978; and (2) whether the

Bureau was a lien creditor without knowledge of the Bank's alleged security interest prior to the perfection of such interest by the Bank.

From an examination of the record, we conclude that the Bureau was a lien creditor on July 7, 1978. Section 9-301, U. C. C., defines a lien creditor as "a creditor who has acquired a lien on the property involved by attachment, levy or the like * * *." A lien on personal property is acquired in this state at the time it is "seized in execution." § 25-1504, R. R. S. 1943. Therefore, the Bureau became a lien creditor within the meaning of section 9-301, U. C. C., when the sheriff levied on the vehicle.

The rule by which to test the validity of a levy has been earlier set out by this court. " 'A manual interference with chattels is not essential to a valid levy thereon. It is sufficient if the property is present and subject for the time being to the control of the officer holding the writ, and that he in express terms asserts his dominion over it by virtue of such writ.' " Battle Creek Valley Bank v. First Nat. Bank of Madison, 62 Neb. 825, 88 N. W. 145 (1901); Boslow v. Shenberger, 52 Neb. 164, 71 N. W. 1012 (1897). See, also, Miller v. Crosson, 131 Neb. 88, 267 N. W. 145 (1936); Meyer v. Michaels, 69 Neb. 138, 95 N. W. 63 (1903). We believe a review of the record makes it clear that a valid levy did occur before the Bank had perfected its security interest in the chattel.

The deputy sheriff expressly asserted his dominion over the vehicle by virtue of the writ. He likewise exerted control over the vehicle as against all others at the time of levy. At that time the deputy sheriff informed Moninger that he was sorry that he had to execute on the vehicle but that it was his job. He further stated that he hoped Moninger would straighten the problem out with the Bureau. It should be noted that the officer's report, as well as the return on the writ, clearly indicated that the of-

ficer "executed" on the vehicle on July 7, 1978. On the basis of this evidence, we conclude that a valid levy took place at that time.

The Bank would have us hold that the pickup should have been physically seized to make the levy valid. We do not believe that failure to take physical possession in this case goes to the validity of the levy. The deputy sheriff did all that was required by the laws of this state with regard to levying under a writ of execution. Whether or not the officer took physical possession after he levied relates to the ability of the officer to produce the property levied on, and to his possible civil liability for failure to do so, not to the validity of the levy. It is, of course, possible that the failure of a levying officer to protect and preserve the property levied upon might give rise to an action between the officer, or his bonding company, and the judgment creditor. In this connection see 33 C. J. S., Executions, § 97, p. 245. We therefore reject the Bank's contention and conclude that the Bureau was a lien creditor on July 7, 1978, by virtue of the deputy sheriff's levy on the writ of execution.

We now turn to the issue of notice and whether the Bureau was a lien creditor without knowledge of the Bank's interest. The Bank would have us hold that the sheriff was placed on notice of its security interest prior to making the levy on the vehicle, and that such notice would be imputed to the judgment creditor, the Bureau. In 70 Am. Jur. 2d, Sheriffs, Police, and Constables, § 1, p. 133, it is stated: "Peace officers are agents of the law and ordinarily are not agents of the parties. Thus, a sheriff is not an agent of an execution creditor except for certain purposes, and the latter is bound only by such acts of the sheriff as are within his lawful authority. Nor is he an agent of a party who may purchase at a sale conducted by him." As stated in Riggs v. Gardikas, 78 N. M. 5, 427 P. 2d 894 (1967): " 'Notice by a debtor

to a sheriff when he was proceeding to attach or to levy upon property is not notice to the creditor for whom the levy is made. * * * ''* * * if notice by the debtor to the sheriff was held sufficient, it would almost render nugatory the statute requiring mortgages of personal property to be recorded; for if the mortgagee could depend upon the custody, care, and diligence of the mortgagor, it would not be necessary to record any such mortgage. It would only be necessary, when any one came to attach, that notice should be given.'' ' '' We believe the above rule is applicable in this case.

The position taken by the Bank would place too great a burden upon the sheriffs and constables of this state when levying upon property as it would require them to inquire into the validity of statements made by the debtor, or information from other sources as to any interest claimed by other parties in the property sought to be levied on. This would, in our view, result in unnecessary delays and burdens in the carrying out of their statutory duties. We also note that our statutes already provide for procedures for the resolution of disputes and the adjudication of rights which third parties may have in or claim to the property levied upon. §§ 25-1521 to 25-1523, R. R. S. 1943. There is no justification to delay the levy of an execution merely on the word of a judgment debtor, who obviously has an interest in retaining possession of the item. We conclude that in levying the execution in this case, the deputy sheriff was carrying out a statutory duty and was acting as an agent of the law, and not as an agent of the judgment creditor. Thus, any information obtained by the deputy sheriff in the performance of his duties would not be imputed to the judgment creditor. We therefore hold that the Bureau was a lien creditor without knowledge of the security interest which the Bank claimed in the vehicle. The Bureau attained this status on July 7, 1978. The rec-

ord discloses that the Bank did not perfect its security interest in the vehicle until July 10, 1978, when it filed a security agreement entered into on that date. As previously stated, the law of this state is clear that a lien creditor without notice has a superior interest to that of parties holding an unperfected security interest in the property. The Bureau thus has prior rights to the proceeds of the sheriff's sale.

It also seems clear that the Bank itself was responsible for any loss it may suffer because of its own inaction and neglect. Section 60-110, R. R. S. 1943, provides for the notation of security interests on certificates of title in order to give notice to third parties of this interest. If the Bank had timely complied with the statute in the instant matter, this dispute would not have arisen. In First Nat. Bank v. Provident Finance Co., 176 Neb. 45, 125 N. W. 2d 78 (1963), we stated: " 'In Nichols v. Bogda Motors, Inc., 118 Ind. App. 156, 77 N. E. 2d 906, it was held that the statute relating to certificates of title to motor vehicles was enacted for the protection of owners of such vehicles, those holding liens thereon, and the public; and that one holding a lien upon a motor vehicle must, insofar as he can reasonably do so, protect himself and others thereafter dealing in good faith, by complying and requiring compliance with applicable laws concerning certificates of title to motor vehicles.' * * * 'It is a general rule that where one of two innocent persons must suffer by the acts of a third, he whose conduct, acts or omissions enables the third person to occasion loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment.' "

We hold, therefore, that the Bureau has prior rights to the proceeds of the sheriff's sale. In view of the decision we reach herein, we need not examine other errors assigned. The judgment of the

District Court is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.