STATE OF NEBRASKA, APPELLEE, V.
ARLO G. GRIESS, APPELLANT.
651 N.W.2d 859

Filed September 17, 2002. No. A-01-1126.

Vicky L. Johnson, of Johnson & Kalkwarf, Fillmore County Public Defender, for appellant.

Don Stenberg, Attorney General, and George R. Love for appellee.

HANNON, SIEVERS, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

Arlo G. Griess appeals his convictions and sentences for possession of a controlled substance and attempted unlawful distribution of a controlled substance. The controlling issue on this appeal is whether contraband and drug paraphernalia found and seized during an "inventory search" of Griess' motor home should have been suppressed. This search was conducted without a warrant immediately after a writ of execution upon a civil judgment against Griess was levied upon a motor home owned and lived in by him. We find that the trial court improperly denied Griess' motion to suppress, because Griess had a legitimate expectation of privacy in the motor home as it was his residence, that a writ of execution does not authorize a warrantless search and seizure of a home, and that Griess did not waive his rights by not resisting a sheriff's action of taking the motor home. We therefore reverse, and remand for a new trial.

## BACKGROUND

Griess' motor home was located on farm property a mile west and 2 miles north of Fairmont, Nebraska, on land owned by Dan Softley. For some time before June 27, 2000, the Nebraska State Patrol had been conducting a surveillance of the Softley property based upon information that methamphetamine was being manufactured at that location. The State Patrol had discovered certain chemicals and items commonly used in the manufacture of methamphetamine in a ravine or ditch on the Softley property, near the location under surveillance. The State Patrol had advised the sheriff of Fillmore County of its investigation and asked the sheriff to contact it if anything suspicious occurred.

On March 27, 2000, an order of execution was issued by the clerk of the Fillmore County District Court to the sheriff to be levied upon Griess' property to enforce a civil judgment held against Griess. On June 27, the sheriff, in the company of a State Patrol officer, went to levy the execution against the motor home, which the sheriff had found was registered in Griess' name. The sheriff told Griess that he was levying the execution on the motor home. Griess asked to remove some of his things from the motor

home and was allowed to do so. At some point, Griess gave the sheriff his keys to the motor home. A tow truck was called, and the motor home was towed to the impound yard in Geneva, Nebraska, where its contents were inventoried by the State Patrol. The contraband and drug paraphernalia which support the criminal charges against Griess were found at that time.

At the hearing on the motion to suppress, the sheriff and Investigator Shane Flynn testified, and two surveillance reports and one interview report in connection with the investigation of possible drug activity on the Softley property were introduced. The relevant details of that evidence will be summarized below. After the hearing, the trial court took the matter under advisement and later made a trial docket entry in which the court stated that its reading of the law indicated that the "motive of the police is not a factor to be considered in these circumstances." The trial court also found that the police and public are entitled to be protected and that therefore, the sheriff and his agents "were entitled to look and find." The motion was overruled, and the case was set for trial. After trial before the court, Griess was found guilty and sentenced to 20 months' to 3 years' imprisonment for possession of a controlled substance and to 20 months' to 4 years' imprisonment for attempted unlawful distribution of a controlled substance. Griess appeals.

## ASSIGNMENTS OF ERROR

Griess argues that the trial court erred (1) in overruling his motion to suppress evidence; (2) in finding sufficient evidence to convict him of the offenses, because the trial court improperly considered certain evidence; and (3) in sentencing him to excessive terms of imprisonment.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of

fact and takes into consideration that it observed the witnesses. *State v. Manning*, 263 Neb. 61, 638 N.W.2d 231 (2002).

In considering a trial court's ruling on a motion to suppress evidence obtained by a search, an appellate court first determines whether there is an initial illegality involved in the search. If such determination involves a consideration of whether an officer acted with reasonable suspicion or probable cause, that determination will be reviewed de novo. See, *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *State v. Manning, supra*; *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

## ANALYSIS

Griess alleges that the trial court erred in overruling his motion to suppress evidence, because the search was conducted without a search warrant. He relies upon the rules which have been summarized as follows:

> Warrantless searches and seizures are per se unreasonable under the Fourth Amendment [to the U.S. Constitution,] subject only to a few " ' " 'specifically established and well-delineated exceptions,' " ' " [citation omitted], which "must be strictly confined by the exigencies which justify [their] initiation." [Citation omitted.] "In the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement."

*State v. Roberts*, 261 Neb. 403, 409-10, 623 N.W.2d 298, 304-05 (2001). That proposition must be the basis of our consideration of the issues of this case.

The State argues that Griess does not have standing to question the search, because he did not have a legitimate expectation of privacy in the motor home. It bases that assertion upon the notions that the lawful execution of the writ ended Griess' expectation of privacy; that when Griess surrendered the keys to the motor home to the sheriff, he therefore also surrendered his expectation of privacy; and that Griess must prove he had a legitimate expectation of privacy. Under this argument, a determination of the status of the motor home, that is, whether it was the place where Griess lived, is a very significant fact.

*Motor Home Was Griess' Home.*

Under our analysis, a major factual issue is whether the motor home was Griess' residence. It was located on another person's property. This record does not have an exact description of Griess' motor home or specific evidence of how it was situated at the time of the levy. The parties called it a vehicle, a motor home, or a mobile home depending upon whether they wanted to stress its mobility or its use as a home. Because its registration document calls it a "motor home," we have used that term exclusively.

In order to give the reader the clearest possible picture from the record, we will summarize the evidence adduced at the hearing on the motion to suppress describing the motor home and its situation. The motor home's registration document shows that it was registered in Griess' name and that it was designated as a 1985 Fleetwood motor home. It is shown to have had an RV (recreational vehicle) plate number and a registered weight of 11,999 pounds. After an extensive study of the record, we were unable to learn whether the motor home was or could readily be self-propelled. Resorting to statutes on the registration of motor vehicles, we note that Neb. Rev. Stat. § 60-3004 (Cum. Supp. 2000) established that some vehicles that are not self-propelled are still classified as recreational vehicles. Looking at the evidence, we conclude that the registration document does not indicate whether the motor home was or was not self-propelled. In any event, the sheriff called a tow truck to take the motor home to the impound yard.

A State Patrol surveillance report entered into evidence stated that close to 2 a.m. on April 29, 1999, the State Patrol, using a thermal imaging device, observed that "a subject" was occupying the motor home. In another report, Investigator Flynn noted that a confidential informant had told him on October 19 that Griess "stayed in his motor home." There is also evidence that the motor home had been on the Softley land for many months as the property had been under surveillance by the State Patrol. There was a "Morton" building on this property, as well as Griess' motor home. The State Patrol had information that the Morton building had construction work done on the interior which included an office, a bathroom, and a loft. Thermal surveillance did not indicate any abnormal heat signature in that

building. The surveillance report indicated that Griess helped with the construction of the interior of the Morton building while residing in his motor home.

Investigator Flynn testified that when he inventoried the inside of the motor home after the sheriff seized it, he observed a couch, a sleeping bag, pillows, a chair, a saxophone, a television, videotapes, items used for cooking, clothing, shoes, toiletries, food items in the pantry area, and personal papers.

We find no evidence to indicate that the motor home was not Griess' home, and such evidence on the subject as is contained in the record requires the conclusions that the motor home was and had been Griess' home for some time and that it had been at the same location for many months prior to June 27, 2000, the day it was seized by the sheriff. We therefore conclude that the motor home was Griess' home at the time the sheriff levied the execution on it. As it was Griess' home, he had a great expectation of privacy in the motor home.

*Effect of Writ of Execution.*

The State further argues that the sheriff acted in accordance with his statutory duties to enforce the execution and that he was required to inventory the motor home. The State argues, " 'An inventory search may be reasonable under the Fourth Amendment even though it is not conducted pursuant to a warrant based upon probable cause.' " Brief for appellee at 9, quoting *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987).

The warrantless search exceptions recognized by the Nebraska Supreme Court include "(1) searches undertaken with consent or with probable cause [citations omitted]; (2) searches under exigent circumstances [citation omitted]; (3) inventory searches [citation omitted]; (4) searches of evidence in plain view [citation omitted]; and (5) searches incident to a valid arrest [citations omitted]." *State v. Roberts*, 261 Neb. 403, 410, 623 N.W.2d 298, 305 (2001). We think the State's position that Griess did not have an expectation of privacy in the motor home is an erroneous approach to any analysis on the issues of this case. The writ of execution may or may not trump Griess' expectation of privacy, or he may or may not have waived his

expectation of privacy, but he rather clearly had such an expectation before the sheriff came to his home on June 27, 2000. The possession of a motor home, even if the motor home is viewed as a motor vehicle, has at least a limited expectation of privacy in it. See *State v. Konfrst,* 251 Neb. 214, 556 N.W.2d 250 (1996) (less rigorous requirements govern searches of automobiles because of diminished expectation of privacy). This court's problem with the parties' analyses is that they both ignore the legal authority of the Nebraska and U.S. Supreme Courts on the effect of a search made pursuant to civil process when that action results in a search that would otherwise be illegal under the 4th and 14th Amendments as an unreasonable search and seizure. This issue is the controlling legal issue in this case.

*Search Under Civil Process.*

■ One of the leading cases on warrantless searches accomplished under the authority of a writ of execution is *State v. Hinchey,* 220 Neb. 825, 374 N.W.2d 14 (1985). In *Hinchey,* a deputy sheriff, armed with a writ of execution issued by the clerk of the court under Neb. Rev. Stat. § 25-1516 (Reissue 1979), entered the home of the defendant to locate personal property upon which to levy execution under the writ. The State sought to justify this warrantless entry into a home upon the basis that that statute required the deputy sheriff to seek entry into the defendant's home to search for the property upon which the execution could be levied. The *Hinchey* court stated:

> Although there are some recognized exceptions which may justify a warrantless search, [citations omitted], as a general rule, searches and seizures inside a home without a warrant are presumptively unreasonable and in violation of an individual's rights guaranteed under the fourth amendment to the U.S. Constitution. [Citations omitted.] . . . "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' [Citation omitted.] And we have long adhered to the view that the warrant procedure minimizes the danger of needless intrusions of that sort."

. . . "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 220 Neb. at 828-29, 374 N.W.2d at 17.

The *Hinchey* court went on to discuss the plain view doctrine which would have applied in that case if the deputy sheriff searching for property to levy execution upon had had lawful authority to enter the defendant's home without a warrant and stated that the "legal justification for being in the [home] without a warrant is the critical issue." *Id.* at 829, 374 N.W.2d at 18. In *Hinchey*, a writ of execution was clearly held not to be a legal justification for a deputy sheriff to be in someone's home.

What the *Hinchey* court found troublesome was the fact that the writ of execution which was used as a basis for the warrantless search was not issued upon the action of any court, but "merely upon the filing of a praecipe with the clerk of the court." *Id.* at 832, 347 N.W.2d at 19. This was a ministerial function of the clerk and was held not to be the same as employing judicial process to obtain a search or arrest warrant. The *Hinchey* court, in finding that this violated the defendant's constitutional rights, stated:

We are unable to see how an officer armed with nothing more than a writ of execution issued by a clerk of the court may enter the premises of an individual, contrary to the individual's direction and objection, on the basis that the officer has a duty to seek property upon which execution may be made. To be sure, the officer has such a duty and may take possession of property whenever possession can be obtained without violating the owner's fourth amendment rights.

220 Neb. at 833, 347 N.W.2d at 20.

*State v. Hinchey*, 220 Neb. 825, 374 N.W.2d 14 (1985), is not the only case that considers the validity of searches of homes under civil process. See, *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S. Ct. 619, 50 L. Ed. 2d 530 (1977) (where search during levy by U.S. Government for delinquent taxes was held to be invalid); *Dorwart v. Caraway*, 290 Mont. 196, 966 P.2d 1121 (1998) (which relied heavily on *Hinchey* to support ruling that entry by deputy sheriff into private residence to execute writ

of execution violated federal and state constitutional rights against unreasonable searches).

The *Hinchey* court concluded:

> We hold that the procedure to be followed to obtain an "execution warrant" should be similar to that prescribed by Neb. Rev. Stat. §§ 29-830 to 29-835 (Reissue 1979), which provide for the issuance of "inspection warrants." Such an execution warrant should be issued only by a judge of a court of record upon reasonable cause supported by affidavit setting out that a writ of execution has been issued and returned unsatisfied in whole or in part and that the affiant has reason to believe that there is property subject to execution in the possession of the debtor kept and maintained within the debtor's residence, not otherwise available for execution, describing the property sought and the place and purpose of the execution. If the judge is satisfied that there is reasonable cause to believe that there is property of the debtor within the debtor's possession and that other property is not available for levy and execution, the judge may then issue an execution warrant authorizing the officer to enter the premises and levy upon property subject to execution. In this manner the fourth amendment prohibition against unreasonable searches and seizures will be satisfied.

220 Neb. at 834, 374 N.W.2d at 20.

Apparently, at the time of the levy in this case, the sheriff was not aware of *Hinchey*, because we find no indication of any pretense of his having followed it.

■ We find *Hinchey* to be controlling here in that the writ of execution cannot be the justification for entry into Griess' motor home and in that the procedure outlined in the preceding quote could be easily modified for a motor home that is a residence. In *Hinchey*, the State sought to use the writ of execution to justify the deputy sheriff's presence in the defendant's home so that the plain view doctrine could be applied. In this case, the State seeks to use the writ of execution to justify the sheriff's taking possession of the motor home and then inventorying it under the inventory exception to the rule against warrantless searches. We conclude that a writ of execution cannot justify an

inventory search that is otherwise prohibited by the 4th and 14th Amendments.

■ The situation in *Hinchey* is distinguishable from the case at hand in that in *Hinchey*, the deputy sheriff was searching for property, whereas in this case, the sheriff had located personal property which so far as he knew was subject to levy. In its brief, the State relies upon Neb. Rev. Stat. § 25-1008 (Reissue 1995), which, in summary, provides that a writ of attachment shall be executed by a sheriff without delay and that the sheriff shall go where the defendant's property may be found, make an inventory of it, and take the same into custody. This statute applies to an order of attachment which is issued by a judge upon the plaintiff's affidavit and not by a court clerk. The attachment procedures are available against a defendant who has absconded, is hiding, or by some other means is avoiding authorized legal procedures. See Neb. Rev. Stat. § 25-1001 (Reissue 1995). There is no justification for applying statutes on attachments to procedures for writs of execution. There are, after all, several statutes regulating a levy pursuant to a writ of execution. See, generally, Neb. Rev. Stat. §§ 25-1501 to 25-1580 (Reissue 1995 & Cum. Supp. 2000).

■ The State's argument seems to assume that the sheriff makes a levy pursuant to a writ of execution on personal property by taking possession of the property levied upon. This assumption is wrong. The Nebraska Supreme Court has held:

> " 'A manual interference with chattels is not essential to a valid levy thereon. It is sufficient if the property is present and subject for the time being to the control of the officer holding the writ, and that he in express terms asserts his dominion over it by virtue of such writ.' " Battle Creek Valley Bank v. First Nat. Bank of Madison, 62 Neb. 825, 88 N. W. 145 (1901); Boslow v. Shenberger, 52 Neb. 164, 71 N. W. 1012 (1897). See, also, Miller v. Crosson, 131 Neb. 88, 267 N. W. 145 (1936); Meyer v. Michaels, 69 Neb. 138, 95 N. W. 63 (1903).

*Credit Bureau of Broken Bow, Inc. v. Moninger*, 204 Neb. 679, 683, 284 N.W.2d 855, 858 (1979).

In *Moninger*, a deputy sheriff received a writ of execution on a judgment, found a motor vehicle registered in the judgment

debtor's name, went to where the debtor and the vehicle were located, and attempted to levy execution upon the vehicle. The debtor told the deputy that a bank had a lien on the vehicle. The deputy gave the debtor a copy of the writ and then took " 'ahold' " of the vehicle and said he was executing upon it. *Id.* at 680, 284 N.W.2d at 857. The deputy then left the vehicle with the debtor. The *Moninger* court held this procedure to have been an effective levy at the time those things were accomplished.

The *Moninger* court cited the case law quoted above to show that the approved procedure has long been recognized as proper for the levy of the execution of a judgment. The sheriff in the case at hand did not need to take possession of the motor home to perform his duty in the process of executing the writ. It seems clear that if in *State v. Hinchey*, 220 Neb. 825, 374 N.W.2d 14 (1985), the deputy sheriff violated the defendant's constitutional rights by entering the defendant's home to find property upon which to levy execution, the sheriff in the case at hand violated Griess' constitutional rights by taking the motor home and then searching it, particularly when the sheriff had no need to take the motor home in order to levy execution upon it.

▮ Furthermore, the procedure used by the sheriff in this case violated statutory rights Griess enjoyed as a judgment debtor. Section 25-1516 provides that upon being served a writ of execution, a judgment debtor must be given notice of his or her exemptions and rights in regard thereto. The copy of the writ in evidence refers to the required notice, so we assume that notice was in accordance with the statute. Section 25-1516 provides a notice that states to the debtor, "The law of Nebraska and the law of the United States provides [sic] that certain property cannot be taken from you and sold to pay a debt." This notice gives citations to the statutes giving debtors the various exemptions, and it even tells them they may request a hearing on their exemption by checking a box on the notice and sending it to the clerk of the court within 20 days of their receipt of notice. *Id.*

Under this statutory procedure, Griess' judgment creditor's rights would still have been protected if the sheriff had levied execution upon the motor home and then left it where it was. This procedure would have had the effect of protecting Griess'

constitutional rights to be free from a warrantless search of his home as well as his rights as a judgment debtor.

It seems clear that in view of the *Hinchey* decision, a sheriff may not adopt an execution procedure against a motor home which deprives a judgment debtor of the right to be free from a warrantless search of his or her home. The rights of the judgment creditor can be protected without depriving the judgment debtor of his or her constitutional rights. There is plenty of time for a sheriff levying execution against a debtor's home to take possession of such home and inventory it after a judicial hearing and in accord with the *Hinchey* decision. It is possible, if not quite probable, that a motor home such as Griess' would be exempt from execution, either as a homestead or as exempt property. The spirit, if not the letter, of § 25-1516 et seq. seems to require that such matters be determined before a person's home is taken, and if not then, at least before the judgment debtor's right to be free from a warrantless search of his or her home is violated. A judicial hearing held before a sheriff takes possession of a residence would give the judgment debtor a chance to protect his or her rights and would not deprive the judgment creditor of his or her rights.

*Did Griess Consent by His Action?*

The State does not directly argue that Griess waived his expectation of privacy or that he consented to the sheriff's taking the motor home, but it does argue that Griess waived his right of privacy when he surrendered the motor home's keys to the sheriff. When the sheriff told Griess that he was going to levy execution on the motor home, he gave Griess a copy of the writ and Griess asked for and received permission to remove some personal items from the motor home. He then gave the sheriff the keys to the motor home. We think this action is best analyzed as a possible waiver or consent. Consent is an exception to the probable cause requirement of the Fourth Amendment. *State v. Claus*, 8 Neb. App. 430, 594 N.W.2d 685 (1999). See, also, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The best expression of this issue is whether Griess consented to the sheriff's taking the motor home, thereby consenting to the inventory search, by virtue of his actions—primarily his

not resisting lawful authority and his giving the sheriff the keys to the motor home.

In *State v. Hinchey*, 220 Neb. 825, 374 N.W.2d 14 (1985), the defendant verbally objected to the search; here, Griess did not. In *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S. Ct. 619, 50 L. Ed. 2d 530 (1977), the resident was not present when the illegal search was made under the guise of a levy, and in *Dorwart v. Caraway*, 290 Mont. 196, 966 P.2d 1121 (1998), the defendant was in jail when his home was illegally searched as part of the levy of a writ of execution. We find no cases which consider whether submission to civil process amounted to consent or a waiver.

We find the general rule to be that mere submission to authority is insufficient to establish consent to a search. *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001); *State v. Walmsley*, 216 Neb. 336, 344 N.W.2d 450 (1984). The U.S. Supreme Court has held, "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968). See, e.g., *Amos v. United States*, 255 U.S. 313, 41 S. Ct. 266, 65 L. Ed. 654 (1921).

The *Bumper* court, in a footnote, cited a federal case that held:

> "Orderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to enter and search the house, against his will if necessary, was not such consent as constituted an underst[ood], intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution."

391 U.S. at 549 n.14, quoting *United States v. Elliott*, 210 F. Supp. 357 (D. Mass. 1962). We conclude that submission to civil process being served by an officer is likely not voluntary.

In this case, the sheriff and a State Patrol officer appeared and the sheriff told Griess he was levying execution on the motor home and gave him the writ of execution. He did not ask Griess'

permission to do anything. Griess asked the sheriff for permission to remove personal items from the motor home. The sheriff's actions demonstrate that he assumed the writ of execution gave him the authority to take the motor home. Griess was presented with law enforcement officers doing what they thought they had a right to do, and Griess did nothing more than should be expected of a citizen: He submitted without resistance. Such peaceful submission is to be encouraged, not discouraged. Griess gave the sheriff the keys to the motor home. We conclude that Griess' actions indicate nothing but a submission to authority and as such were insufficient to establish a waiver of his right to privacy or consent to unlock and search the motor home.

## CONCLUSION

Since *Hinchey, supra*, held that a writ of execution did not justify an entry which enabled law enforcement officers to take advantage of the plain view doctrine, we conclude that a similar writ does not authorize a seizure of a judgment debtor's home so as to justify an inventory search of the home. We also find that Griess did not consent to the sheriff's taking the motor home. We therefore find that the trial court incorrectly denied Griess' motion to suppress the physical evidence found in the motor home as a result of a warrantless search by law enforcement officers. The procedure undertaken in this case denied Griess a fundamental constitutional right. Because we find that the motion to suppress should have been granted, we need not consider the other issues argued. See *State v. Hochstein and Anderson*, 262 Neb. 311, 632 N.W.2d 273 (2001), which holds that an appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. Under *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000), we reverse Griess' convictions, vacate the sentences, and remand the cause for a new trial.

REVERSED, SENTENCES VACATED, AND
CAUSE REMANDED FOR A NEW TRIAL.