STATE OF NEBRASKA, APPELLEE, V. MARVIN D. SEARLES, APPELLANT.

336 N.W.2d 571

Filed July 15, 1983. No. 82-672.

John R. Doyle and Timothy J. Doyle, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, CAPORALE, AND SHANAHAN, JJ.

BOSLAUGH, J.

The defendant was convicted of first degree murder in the stabbing of Peggy Baker and was sentenced to life imprisonment. He has appealed and has made the following assignments of error: (1) The trial court erred in refusing to suppress

certain evidence; (2) The trial court erred in refusing to admit a memorandum written by the defendant's psychiatrist; and (3) The defendant was denied his right to a speedy trial.

On May 19, 1980, the defendant was a resident of a state-licensed residential care facility. Although 90 percent of the residents required medication for psychiatric disorders, none of the residents required nursing care. The facility consisted of three-bedroom apartments, each occupied by six residents. The residents shared the use of the apartment's kitchen, bathroom, and living room. The facility had a recreation room and dining room used by all residents. The residents did not have keys to the apartments. The main doors to the building were not locked until after visiting hours in the evening.

The defendant occupied apartment 12 with five others, including the victim, Peggy Baker. The evidence shows that the defendant and Peggy often argued over the use of the apartment's television. On May 19, 1980, defendant was told by Mary O'Shea, the proprietor of the home, that this situation was upsetting the other residents and the defendant would be moved to a different apartment. The defendant resisted this suggestion and indicated that Peggy, not he, should move.

After lunch on that date the defendant returned to the apartment and lay down for a while. When he got up he took a knife out of the kitchen drawer and went out to the balcony where Peggy was standing. He then stabbed her several times, inflicting fatal wounds. The victim died shortly after arrival at the hospital.

Peggy's screams alerted staff members who went to the scene and called the police. The defendant was found in the living room, poking at his stomach with a knife. One of the staff members took the knife away from the defendant and placed it in the kitchen sink.

Mary O'Shea, who was at the scene, testified that

the defendant said: "I stabbed her good; I hope I killed her." Other witnesses testified that the defendant had made a similar remark at that time.

When the police arrived, a staff member answered Officer Miller's inquiries regarding the location of the knife. Miller looked at the knife in the sink and then placed a trash can over the knife so that it would not be disturbed. Miller arrested the defendant and took him to the police station where he was given the *Miranda* warnings.

Detective VanButsel arrived at the scene shortly after the defendant had been taken away. VanButsel remained at the scene and took several measurements and photographs of the apartment and removed the knife from the sink. His investigation at that time was limited to the kitchen, balcony, and living room areas.

Several hours later, Officer Miller returned to the scene with a search warrant. The defendant's bedroom was then searched.

An information charging the defendant with first degree murder was filed on July 9, 1980. On September 15, 1980, pursuant to a motion filed by the defendant on July 18, 1980, the defendant was found incompetent to stand trial. On September 4, 1981, following an examination ordered upon the court's own motion, the defendant was found competent to stand trial.

The public defender withdrew from the case in October 1981. New counsel were then appointed and granted a continuance in order to properly prepare for trial. On September 25, 1981, prior to the withdrawal of the public defender, the defendant had filed a motion to suppress statements made by him. That motion was heard at various times between November 3 and December 21, 1981, and sustained in part and overruled in part on January 4, 1982. On January 7, 1982, the defendant filed a motion to suppress all of the evidence seized by the police officers as a result of the search of the premises on May 19,

1980. This motion was overruled on February 9, 1982. The trial began on March 1, 1982.

The defendant pleaded not guilty by reason of insanity, and admitted at the trial that he had stabbed Peggy Baker. Several psychiatrists testified as to the defendant's mental state at the time he committed the act. There is no contention that the evidence was not sufficient to support the verdict of guilty.

The defendant contends that the search made by Detective VanButsel without a warrant was unreasonable and that the evidence, photographs, and measurements collected by Detective VanButsel without a warrant should have been suppressed.

A failure to have a search warrant when evidence is collected does not necessarily require that the evidence seized be suppressed. "[A] motion to suppress can only be urged by one whose Fourth Amendment rights were violated and not one aggrieved solely by the introduction of the incriminating evidence." *State v. Martinez*, 198 Neb. 347, 352, 252 N.W.2d 630, 633 (1977). The defendant was required to show that he had a reasonable expectation of privacy in the kitchen, living room, and balcony areas of the apartment before his fourth amendment rights would come into play. See, *id*; *State v. Van Ackeren*, 200 Neb. 812, 265 N.W.2d 675 (1978).

In the present case the defendant had no reasonable expectation of privacy in the apartment's common areas. Those areas were used by all six residents. No lock was kept on the door. The staff had access to these areas so that they could supervise the residents. In *People v. Heflin*, 40 Ill. App. 3d 635, 351 N.E.2d 594 (1976), *aff'd* 71 Ill. 2d 525, 376 N.E.2d 1367 (1978), *cert. denied* 439 U.S. 1074, 99 S. Ct. 848, 59 L. Ed. 2d 41 (1979), incriminating letters were found in jointly used areas of a residence. The court held that these letters were properly seized as there was "no reasonable expectation of privacy" in the jointly used areas. *Id*. at 647, 351 N.E.2d at 604.

The only area of the apartment in which the defendant had a privacy interest was his bedroom. That area was properly searched pursuant to the warrant.

Even if we were to assume that the defendant had an expectation of privacy in the common areas, the evidence collected was not unlawfully seized. An officer may seize evidence and contraband which is in "plain view" without a warrant, if he has the right to be in the position where he has such a view. Such activity does not constitute a search. *State v. Romonto*, 190 Neb. 825, 212 N.W.2d 641 (1973); *State v. McCune*, 189 Neb. 165, 201 N.W.2d 852 (1972), *cert. denied* 412 U.S. 954, 93 S. Ct. 3002, 37 L. Ed. 2d 1007 (1973); *State v. Holloman*, 197 Neb. 139, 248 N.W.2d 15 (1976).

In the present case the police officers had a right to be on the scene. They were present in response to a call as a result of a life-threatening emergency. The incriminating evidence they seized while on the premises was discovered in plain view. No warrant is required in such a situation. See *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981).

The defendant next objects to the exclusion of a memorandum or "charge slip," written by a psychiatrist called by the State, which showed a diagnosis different from that testified to by the witness at the trial. The witness had treated the defendant since 1979, and had treated him in March 1980 when the defendant had been hospitalized for an overdose of Tylenol. The psychiatrist had testified that his diagnosis of the defendant's mental condition was "schizophrenia, residual type, and the seizure disorder by history."

The "charge slip," written by the doctor when the defendant had been hospitalized for the overdose of Tylenol, indicated that the defendant had "acute and chronic alcohol intake." The charge slip was shown to the witness on cross-examination. He admitted having written the document, and his testimony dis-

closed the contents of the writing. The witness testified that the statement on the charge slip was not his official diagnosis but was only a note to the office on charges.

The determination of the admissibility of physical evidence lies within the discretion of the trial court and will not be overturned absent a clear abuse of discretion. *State v. Weible*, 211 Neb. 174, 317 N.W.2d 920 (1982). The defendant elicited all the information contained in the memorandum on cross-examination of the doctor. No prejudice resulted to the defendant by the exclusion of the memorandum. There was no abuse of discretion.

The defendant's final assignment of error is that his motion to dismiss should have been sustained because he was denied his constitutional and statutory right to a speedy trial.

Neb. Rev. Stat. § 29-1207 (Reissue 1979) requires that the defendant be brought to trial within 6 months after the information is filed. Periods during which the defendant is found incompetent to stand trial are not included in the 6-month period. § 29-1207(4)(a). Also not included are periods during which pretrial motions made by the defendant are pending, and delays caused by a grant of continuance to the defendant.

In the present case the information was filed on July 9, 1980. On July 18, 1980, the defendant filed his first pretrial motion, which resulted in a finding that the defendant was incompetent to stand trial. The defendant was found competent to stand trial on September 4, 1981. The motion to suppress statements which was filed on September 25, 1981, was not ruled on until January 4, 1982. The motion to suppress evidence seized in the search of the premises, filed on January 7, 1982, was overruled on February 9, 1982. Trial began on March 1, 1982. The only periods not excluded were 9 days in July 1980, 21 days in September 1981, and 20 days in 1982. See *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981).

Generally, an accused cannot take advantage of a delay in being brought to trial where he was responsible for the delay either by action or inaction. *State v. Fatica*, *ante* p. 776, 336 N.W.2d 101 (1983). Defendant was not denied his right to a speedy trial. There being no error, the judgment is affirmed.

AFFIRMED.