STATE OF NEBRASKA, APPELLEE, V. MICHAEL J. HINCHEY, APPELLANT.

374 N.W.2d 14

Filed September 20, 1985.   No. 84-783.

Barbara Thielen of Taylor, Fabian, Thielen & Thielen, for appellant.

A. Eugene Crump, Deputy Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This appeal presents to the court a case of first impression and concerns the question as to when and under what circumstances a judicial officer, armed only with a writ of execution issued pursuant to the provisions of Neb. Rev. Stat. § 25-1501 (Reissue 1979), may enter a person's dwelling without violating the individual's right to be free from unreasonable searches and seizures under the fourth and fourteenth amendments to the U.S. Constitution.

The evidence discloses that on January 19, 1984, Deputy Lloyd Glesmann was on duty with the Sarpy County, Nebraska, sheriff's office. At 2 p.m. Deputy Glesmann, assigned to the process division, was directed to apartment 11 at 818 Janesview in Papillion, Nebraska, for the purpose of attempting to serve a writ of execution on the appellant, Michael J. Hinchey. The writ of execution had been issued by the clerk of the county court for the purpose of attempting to satisfy a judgment obtained by another against Hinchey in the small claims court in the amount of $208.40. Under the provisions of Neb. Rev. Stat. § 25-1502 (Reissue 1979), executions are of two kinds: (1) against the personal property of the judgment debtor, wherever found; and (2) for the delivery of the possession of real property with damages for withholding such property. The writ of execution which is issued by the clerk of the court directs the sheriff to seek and take possession of property sufficient to satisfy the judgment. See Neb. Rev. Stat. § 25-1516 (Reissue 1979). The sheriff or his deputy must first seek to satisfy the judgment by levying execution upon personal property, and if the value of the personal property is insufficient to satisfy the debt, the sheriff may then levy on real property. See, *Runge v. Brown*, 29 Neb. 116, 45 N.W. 271 (1890); Neb. Rev. Stat. § 25-1518 (Reissue 1979).

Upon arriving at the Hinchey home Deputy Glesmann knocked on the door of the apartment, and after a brief delay

Hinchey answered the door. The deputy identified himself to Hinchey, stated his purpose, and asked for permission to enter the Hinchey premises. Hinchey refused. The officer explained to Hinchey that arrangements had to be made for payment of the judgment. After a few minutes and four or five additional requests for admission by the deputy, to which Hinchey each time said "No," Hinchey finally agreed to let the deputy into his home. Before doing so, however, he said, "Wait a second, let me put something away." The deputy testified that he clearly understood that Hinchey wanted him to wait in the hall and did not want him to come into the apartment until Hinchey returned to the door. Hinchey walked back into the apartment. At this time the front door of the apartment was partially open, and the deputy proceeded to follow Hinchey into the apartment. Once inside the apartment, the deputy observed a jar which appeared to contain marijuana. Hinchey was immediately instructed to sit on the couch and not to move and was subsequently arrested by the deputy for possession of drug paraphernalia in violation of Neb. Rev. Stat. § 28-441 (Cum. Supp. 1984) and possession of marijuana, less than 1 ounce, in violation of Neb. Rev. Stat. § 28-416(6) (Cum. Supp. 1984).

Prior to trial Hinchey filed two motions to suppress the evidence. The first motion was in effect a claim that Hinchey's rights guaranteed to him under the fourth and fourteenth amendments to the U.S. Constitution had been violated. The second motion alleged that the officer had failed to give to Hinchey his *Miranda* warnings, and therefore any statements or evidence obtained after he was arrested was in violation of Hinchey's constitutional rights guaranteed to him under the fifth, sixth, and fourteenth amendments to the U.S. Constitution.

The county court found that all evidence obtained by the officer, including those items which were in plain view and seen prior to the time that Hinchey was placed under arrest, was admissible into evidence but that all statements or evidence obtained after the officer ordered Hinchey to sit on the couch and placed him under arrest but did not give him his *Miranda* warnings was inadmissible. Following trial to the county court, the county court found Hinchey guilty of count II, possession

of marijuana, less than 1 ounce, and dismissed count I, possession of drug paraphernalia. Hinchey was sentenced to pay a fine of $100 plus costs and ordered to take a drug education course. Upon appeal to the district court for Sarpy County, Nebraska, the district court affirmed Hinchey's conviction and sentence. The district court entered a detailed order in which it sought to distinguish the case of *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S. Ct. 619, 50 L. Ed. 2d 530 (1977), and further relied upon the U.S. Supreme Court decision in *Michigan v. Tyler*, 436 U.S. 499, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). Specifically, the district court relied on § 25-1518, which directs an officer to whom a writ of execution is delivered to proceed immediately to levy upon goods and chattels. We believe, however, that the decision of the district court was in error, and therefore we must reverse and remand for a new trial.

Although there are some recognized exceptions which may justify a warrantless search, see, *California v. Carney*, ____ U.S. ____, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) (motor home); *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) (automobile); *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (automobile); *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976) (automobile inventory); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (consent); *State v. Hert, ante* p. 447, 370 N.W.2d 166 (1985) (exigent circumstances); and *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981) (consent), as a general rule, searches and seizures inside a home without a warrant are presumptively unreasonable and in violation of an individual's rights guaranteed under the fourth amendment to the U.S. Constitution. See, *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), *reh'g denied* 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120; *State v. Weible*, 211 Neb. 174, 317 N.W.2d 920 (1982). While *Payton v. New York, supra*, concerned itself with a warrantless arrest, the language of the opinion makes it clear that "[t]he simple language of the Amendment applies equally to seizures of

persons and to seizures of property." *Id.* at 585. The *Payton* Court went on to state at 585-86:

Our analysis in this case may therefore properly commence with rules that have been well established in Fourth Amendment litigation involving tangible items. As the Court reiterated just a few years ago, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v United States District Court*, 407 U. S. 297, 313 [92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972)]. And we have long adhered to the view that the warrant procedure minimizes the danger of needless intrusions of that sort.

The U.S. Supreme Court in *Payton, supra* at 590, continued: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."

Neither party to this action argues that the entry was consensual. The State, in its brief, concedes that "appellant did not voluntarily consent to the deputy's entry within the consent to search exception to the warrant requirement." In this regard, based upon the evidence, we believe that the State is correct.

The State argues, however, that under the "plain view doctrine" once the officer was inside the premises and saw the marijuana in plain view, he was authorized to seize the marijuana without a warrant. See, *United States v. Lee*, 274 U.S. 559, 47 S. Ct. 746, 71 L. Ed. 1202 (1927); *State v. Searles*, 214 Neb. 849, 336 N.W.2d 571 (1983). However, the "plain view doctrine" does not assist us in this case unless it can be said that Deputy Glesmann had some lawful authority to enter Hinchey's apartment without a warrant. The legal justification for being in the apartment without a warrant is the critical issue.

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification— whether it be a warrant for another object, hot pursuit,

> search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure.

*Coolidge v. New Hampshire, supra* at 466.

The State's justification for entry without a warrant is that the officer was required by statute to seek property upon which a levy could be made. Such a statute, however, cannot supersede the prohibitions against unreasonable searches and seizures of the fourth and fourteenth amendments to the U.S. Constitution.

The case of *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S. Ct. 619, 50 L. Ed. 2d 530 (1977), which involved a levy by the U.S. Government for delinquent taxes, makes that point quite clear. As noted by the U.S. Supreme Court in *G. M. Leasing Corp., supra* at 354-55:

> It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer.
>
> Indeed, one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and writs of assistance.

The Court further said at 352-53: " '[O]ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' [Citation omitted.]"

Even without the prohibition created by the fourth amendment, Deputy Glesmann was not authorized to make a nonconsensual, warrantless entry into Hinchey's home for the purpose of making a levy. At common law an officer was not permitted to break open an outer door of the debtor's dwelling house for the purpose of levying an execution on the owner's goods therein. 30 Am. Jur. 2d *Executions* § 261 (1967). The rule has been stated:

"The common law, both in England and America, jealous of intrusion upon domestic peace and security, regards every man's house as his castle and fortress as well for his defense against injury and violence as for his repose. It is this ancient and well-known principle that underlies the whole law of the right to break and enter a dwelling house to serve a civil writ or process. Accordingly, therefore, the authorities are substantially agreed that, as a general rule, in the absence of statute, the outer door or other outside protection to a dwelling house may not, even after request and refusal of admittance, be broken or forcibly entered in the execution of a civil writ or process either against the person or property of the householder . . . ."

*Vanden Bogert v. May*, 334 Mich. 606, 611, 55 N.W.2d 115, 117-18 (1952). The establishment of the fourth amendment and more recent decisions such as *G. M. Leasing Corp. v. United States, supra*, only tend to reinforce the common-law rule.

Even if a creditor has a security interest in the debtor's property, he may not violate the debtor's fourth amendment rights. Neb. U.C.C. § 9-503 (Reissue 1980) limits the creditor's right to secure possession of the collateral. It provides:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under section 9-504.

It is clear that § 9-503 permits a creditor to take possession of the property without judicial process, only if it can be done without breach of the peace, such as where the debtor grants consent or permission to the creditor. Cases throughout the country which have reviewed what constitutes a "breach of the

peace" are varied, but in no instance has the creditor been permitted to violate the debtor's fourth amendment rights. See, *Henderson v. Security Nat. Bank*, 72 Cal. App. 3d 764, 140 Cal. Rptr. 388 (1977); *Quest v. Barnett Bank of Pensacola*, 397 So. 2d 1020 (Fla. App. 1981); *Deavers v. Standridge*, 144 Ga. App. 673, 242 S.E.2d 331 (1978); *Dixon v. Ford Motor Credit Corp.*, 72 Ill. App. 3d 983, 391 N.E.2d 493 (1979); *Morris v. Bk. & Tr. Co.*, 21 Ohio St. 2d 25, 254 N.E.2d 683 (1970); *Stone Machinery Co. v. Kessler*, 1 Wash. App. 750, 463 P.2d 651 (1970).

To the same extent, if force or threats of force are necessary to obtain immediate possession of collateral on a debtor's default, the right of the secured party to obtain such possession must be effected by a judicial action rather than by self-help, thereby requiring the individual to bring an appropriate replevin action. See *Platte Valley Bank of North Bend v. Kracl*, 185 Neb. 168, 174 N.W.2d 724 (1970).

One may argue here that this was an attempt to secure property by judicial process in that the deputy was armed with a writ of execution. The difficulty with that argument is that the statutes of Nebraska authorizing the issuance of a writ of execution do not require any action by the court. Section 25-1501 provides: "Executions shall be deemed process of the court, and shall be issued by the clerk and directed to the sheriff of the county. They may be directed to different counties at the same time." The writ of execution is not issued by action of the court but merely upon the filing of a praecipe with the clerk of the court. Upon filing of such praecipe the clerk ministerially issues the writ of execution without any showing upon which it may be found that property cannot otherwise be obtained without violating the debtor's fourth amendment right against unreasonable searches and seizures. That is why arming a sheriff or one of his deputies with a writ of execution is not the same as employing judicial process of a type required for one to obtain a search warrant or an arrest warrant. We see little reason to distinguish between the requirements which must be met before property or persons may be seized for criminal purposes and before property or persons may be seized for civil purposes.

Likewise, the fourth amendment does not recognize such a distinction. Even *Michigan v. Tyler*, 436 U.S. 499, 504-05, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978), relied upon by the district court, notes the absence of any such distinction.

The decisions of this Court firmly establish that the Fourth Amendment extends beyond the paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of crime. As this Court stated in *Camara v. Municipal Court*, 387 U. S. 523, 528 [87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)], the "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. *See v. Seattle*, 387 U. S. 541 [87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967)]; *Marshall v. Barlow's, Inc., ante*, at 311-313 [98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978)]. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment.

The U.S. Supreme Court in *Tyler* went on to note that a burning building would indeed constitute an exigent circumstance and that once a fireman was in the building by reason of the fire, he or she could remain for a reasonable time thereafter to investigate. The Court, however, further observed that once the fire was extinguished and the officer had completed his or her initial investigation, any further entry into the building would require the issuance of a warrant.

We are unable to see how an officer armed with nothing more than a writ of execution issued by a clerk of the court may enter the premises of an individual, contrary to the individual's direction and objection, on the basis that the officer has a duty to seek property upon which execution may be made. To be sure, the officer has such a duty and may take possession of property whenever possession can be obtained without violating the owner's fourth amendment rights. Additionally,

the statutes provide that the debtor may be ordered to appear before a judge and supply information as to his or her assets and their whereabouts. See Neb. Rev. Stat. § 25-1565 (Reissue 1979). Interestingly enough, instead of issuing an order requiring the attendance of the judgment debtor as provided for in § 25-1565, the debtor may be placed under arrest, but only after evidence is presented to a judge that the debtor intends to leave the state in order to avoid satisfying the judgment.

We believe, therefore, that, absent exigent circumstances, the rule which applies before an officer may enter into a home for the purpose of seizing property or arresting an individual should also apply where an officer has been unable to secure personal property or real property sufficient to satisfy a judgment and has reason to believe that the debtor has property within his residence which he is concealing in order to avoid satisfying the judgment. We hold that the procedure to be followed to obtain an "execution warrant" should be similar to that prescribed by Neb. Rev. Stat. §§ 29-830 to 29-835 (Reissue 1979), which provide for the issuance of "inspection warrants." Such an execution warrant should be issued only by a judge of a court of record upon reasonable cause supported by affidavit setting out that a writ of execution has been issued and returned unsatisfied in whole or in part and that the affiant has reason to believe that there is property subject to execution in the possession of the debtor kept and maintained within the debtor's residence, not otherwise available for execution, describing the property sought and the place and purpose of the execution. If the judge is satisfied that there is reasonable cause to believe that there is property of the debtor within the debtor's possession and that other property is not available for levy and execution, the judge may then issue an execution warrant authorizing the officer to enter the premises and levy upon property subject to execution. In this manner the fourth amendment prohibition against unreasonable searches and seizures will be satisfied.

In this case the evidence is clear that the entry by the officer into Hinchey's home was nonconsensual and in violation of Hinchey's fourth amendment rights. For that reason the

motion to suppress should have been sustained. The decision of the district court is therefore reversed and remanded for new trial consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.