**Dante ADAMS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S04–0011–CR–627.

Supreme Court of Indiana.

Feb. 8, 2002.

Robert W. Hammerle, Joseph M. Cleary, Hammerle Foster Allen & Long–Sharp, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This is the second of two cases we decide today involving Dante Adams's difficulties with state revenue and criminal authorities after cocaine was discovered first in his safety deposit box and later in his home. This case presents the question of whether the cocaine found in a search of the home by revenue authorities who were seeking property to satisfy a tax assessment can be used by criminal authorities in a subsequent drug prosecution. We conclude the search of the home was unconstitutional and that the exclusionary rule bars the use of the cocaine as evidence in criminal proceedings.

*Background*

Police officers found cocaine in a safe deposit box that Adams leased from an Indianapolis bank, but a trial court later determined that the search violated Adams's constitutional rights and suppressed the cocaine for purposes of pending criminal charges against him.[1]

On March 23—a day before the criminal charges were dropped—the Indiana Department of Revenue ("the Department") issued an assessment pursuant to the Controlled Substance Excise Tax ("CSET")[2] against Defendant. The assessment included $79,548 in unpaid tax and a 100 percent penalty, yielding a total assessment of $159,096. The drugs seized from Defendant's safe deposit box were the basis for the tax. Upon learning of the assessment, Defendant filed a protest letter with the Department.

On March 31, 1998, the Department issued a tax warrant to collect on the CSET assessment. Pursuant to the warrant, revenue officers entered Defendant's home on April 13. While looking for assets to satisfy the assessment, the officers discovered cocaine hidden in a stove and in a bedroom drawer. Marion County narcotics detectives waited outside the home while revenue officers searched it. When the Department's officers found the cocaine, the narcotics officers entered. Even though the narcotics officers decided to seek a search warrant, the search of the home continued unabated. In fact, the officers found more cocaine before a search warrant was obtained.[3]

Defendant was arrested and charged with Dealing in Cocaine,[4] a Class A felony,

1. We set forth additional facts in the companion case issued today, *Dep't. of Revenue v. Adams,* 762 N.E.2d 728 (Ind.2002).

2. The CSET is a tax on the possession of certain narcotics. We discuss the tax and the procedures for collecting it in greater detail *infra.*

3. All of the cocaine at issue in this case was discovered prior to the time the police served a valid search warrant.

4. Ind.Code § 35–48–4–1 (1998).

and Possession of Cocaine,[5] a Class C felony. Defendant filed a motion to suppress the cocaine on the grounds that the assessment and the tax warrant were based on the evidence illegally seized in the original criminal case. The trial court denied the motion to suppress. Defendant sought an interlocutory appeal, which both the trial court and the Court of Appeals granted.

The Court of Appeals reversed the trial court, concluding that the exclusionary rule applies to the CSET and as such the cocaine was the "fruit of the poisonous tree" in the criminal trial. *Adams v. State*, 726 N.E.2d 390, 393 (Ind.Ct.App. 2000). We granted transfer. *Adams v. State*, No. 49S04–0011–CR–627, 2000 Ind. LEXIS 1098 (Ind. Nov. 3, 2000). For the reasons set forth below, we also reverse the trial court.

### Discussion

■ Defendant contends that the revenue officers searched his residence when they served the jeopardy tax warrant and that this search violated the Fourth Amendment's prohibition on unreasonable searches and seizures.[6] The paramount concern of the Fourth Amendment[7] is the reasonableness of the state's intrusion into the privacy of its citizens. *See Vernonia School Dist. v. Acton*, 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) ("As the text of the Fourth Amendment indicates, the ultimate measure of the con-

stitutionality of a governmental search is 'reasonableness.' "). Generally, a search of a home is unreasonable unless it is conducted pursuant to a search warrant based on probable cause. *See Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Therefore, we will first look at the Indiana CSET collection procedures to determine whether the revenue officers entered Defendant's home pursuant to a warrant based on probable cause.

■ We begin this analysis by distinguishing between two different chapters of the Indiana tax code. Chapter 3 of Article 7 of the tax code imposes the CSET and sets forth procedures for its enforcement. Ind.Code § 6–7–3 ("CSET Chapter"). Chapter 5 of Article 8.1 of the tax code sets forth the Department's generic enforcement procedures applicable to all taxes it collects. This includes CSET and such other taxes as the gross income and retail sales taxes. Ind.Code § 6–8.1–5 ("General Enforcement Chapter").

Under section 3 of the General Enforcement Chapter, the CSET's status as a "jeopardy assessment" allows the Department to expedite collection, including the power to issue "jeopardy tax warrants" against the taxpayer. Ind.Code § 6–8.1–5–3. These warrants empower revenue officers to "levy on and sell the [taxpayer's]

---

**5.** *Id.* § 35–48–4–6.

**6.** United States Supreme Court precedent makes clear that the revenue officers' entry of Adam's home to collect the CSET assessment was a search. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (holding that revenue officers conducted a search when they entered a cottage and seized records when levying on delinquent tax). *Cf. Thomas v. Indiana Dept. of State Revenue*, 675 N.E.2d 362, 367 (Ind. Tax Ct.1997).

**7.** The Fourth Amendment to the federal constitution states that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Adams does not raise any independent claims under the analogous provision of the Indiana Constitution found in Article 1, § 11.

property" and to do so "either without or with the assistance of the sheriffs of any counties in the state." *Id.*[8] Jeopardy tax warrants are issued by the Department unilaterally without judicial review but typically can be issued only when the Department concludes that the taxpayer intends to take some action that would jeopardize the state's ability to collect the tax. *See id.* However, the CSET Chapter provides that "[a]n assessment for the tax due under [the CSET] is considered a jeopardy assessment. The Department shall demand immediate payment and take action to collect the tax due as provided by Ind. Code § 6–8.1–5–3." Ind.Code § 6–7–3–13. As such, the CSET Chapter provides that assessments under the CSET are jeopardy assessments *per se,* Ind.Code § 6–7–3–13, allowing the Department to skip the finding of exigency required by section 3 of the General Enforcement Chapter, Ind.Code § 6–8.1–5–3.

Under these statutes, then, jeopardy tax warrants under the CSET are not issued pursuant to judicial review and are not necessarily based on probable cause since there is no required finding of exigency. An entry of a home pursuant to these warrants is therefore presumptively unreasonable and the search of Defendant's home was unconstitutional unless some exception to the warrant rule applies.

■■■ The Supreme Court has recognized that the Fourth Amendment's requirement of reasonableness will allow the government to conduct some searches in non-criminal or administrative contexts when the same search would be invalid if conducted during a criminal investigation. For example, the Court has carved both "administrative search"[9] and "special needs"[10] exceptions to the warrant requirement on the basis that the circumstances present in those contexts make a warrantless search reasonable for Fourth Amendment purposes. Under this analysis, we must determine whether the nature of the CSET makes an entry into a home to collect the tax *reasonable* even if the revenue officers obtained only a non-judicial jeopardy tax warrant.

The Supreme Court had the opportunity to analyze the reasonableness of a warrantless search of a home pursuant to tax collection proceedings in *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). The facts of *G.M. Leasing* are worthy of close attention. The case involved the seizure of

**8.** We will assume for the sake of argument that this language purports to give revenue officers the power to enter a home under a jeopardy tax warrant.

**9.** Administrative searches are reasonable because they are "carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement." *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). These administrative searches may be conducted without a warrant under three criteria: 1) "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made"; 2) "the warrantless inspections must be 'necessary to further [the] regulatory scheme'"; and 3) "'the statute's inspection program, in

terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'" *New York v. Burger,* 482 U.S. 691, 703, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (quoting *Donovan v. Dewey,* 452 U.S. 594, 600–02, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981)).

**10.** The special needs of government may justify a warrantless, suspicionless search "where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion." *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

several expensive automobiles to satisfy a tax assessment. *Id.* at 341–43, 97 S.Ct. 619. Revenue officials found one such automobile inside a free-standing garage near a cottage owned by the taxpayer. *Id.* at 344–45, 97 S.Ct. 619. Upon learning that the taxpayer used the cottage for a business enterprise related to the tax assessment,[11] the revenue agents seized the cottage in hopes of finding records that would lead to more assets. *Id.* at 345–46, 97 S.Ct. 619. The agents seized several sets of business records after conducting a search of the cottage. *Id.* At no point in this process did the agents obtain a search warrant, although they claimed authority to levy on the taxpayer's property pursuant to federal statutes.

The Supreme Court determined that the warrantless search of the cottage was unreasonable. The Court recognized that the power to enforce tax laws—including the power to seize assets to satisfy tax debts—was critical to the functioning of government:

> Indeed, one may readily acknowledge that the existence of the levy power is an essential part of our self-assessment tax system and that it enhances voluntary compliance in the collection of taxes that this Court has described as "the lifeblood of government, and their prompt and certain availability an imperious need."

*Id.* at 350, 97 S.Ct. 619 (quoting *Bull v. United States*, 295 U.S. 247, 259, 55 S.Ct.

695, 79 L.Ed. 1421 (1935)). But the Court determined that general Fourth Amendment principles applied to tax collection procedures, in part because the British abused general warrants when collecting royal taxes during the colonial period. *Id.* at 355, 97 S.Ct. 619. Because the Fourth Amendment applied to tax collection, the Court concluded that the warrant requirement should apply to levies under the federal tax code:

> The intrusion into petitioner's office is therefore governed by the normal Fourth Amendment rule that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid *search warrant.*"

*Id.* at 359, 97 S.Ct. 619 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (emphasis added)).

Finding that the general warrant rule applied, the Court then rejected the government's contention that an exception to the rule should apply to the IRS's search. Specifically, the Court rejected the government's claim that provisions of the Internal Revenue Code authorized a warrantless entry of a home for purposes of a tax levy and that these provisions made the search of the cottage reasonable. The government claimed that 26 U.S.C. § 6331(b), as it then read,[12] authorized the Internal Rev-

---

**11.** The cottage was also used as a residence by the taxpayer's son, who became an intervenor in the tax collection suit. *Id.* at 347, 97 S.Ct. 619.

**12.** At the time of the search, 26 U.S.C. § 6331 provided:

(a) Authority of Secretary.
If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and

such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.... If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax,

enue Service to use "every means possible to deprive the taxpayer of use, enjoyment, or title to property" including "warrantless intrusions into privacy." *G.M. Leasing,* 429 U.S. at 357, 97 S.Ct. 619. The government relied on language in the statute that defined the IRS's power to levy to include "the power of distraint and seizure by any means." The government argued that this language authorized an administrative search of the type the Court first found permissible in *Camara v. Municipal Court,* 387 U.S. 523, 531, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1741, 18 L.Ed.2d 930 (1967).

The Court assumed for the sake of argument that the statute purported to give the IRS power to make warrantless searches, but rejected on two grounds the claim that such searches would be reasonable administrative searches. First, the Court concluded that § 6331 gave the IRS excessive discretion in determining what property to search:

> The respondents recognize that one of the Court's critical concerns in *Camara* and *See* was the discretion of the seizing officers. Yet § 6331 clearly gives the Secretary or his delegate discretion as to what property to seize. If more than one location is involved, the Secretary will choose which dwelling will be invaded. If property is to be found both in public places and in private areas, the Secretary may choose which to seize.

This hardly can be called a restraint on discretion.

*Id.* at 357, 97 S.Ct. 619 (citation omitted).

Second, the Court rejected the government's claim that a search under the statute was reasonable because a warrant requirement would burden the government's ability to collect taxes in exigent circumstances:

> The respondents assert that the burden on the Government of obtaining a warrant is a relevant factor. They suggest that the burden is great here because the Government is dealing with persons who may attempt to put their property beyond reach. Yet the statute authorizes distraint and seizure whenever a taxpayer neglects or refuses to pay his tax, and regardless of any indication of risk of concealment. The statute simply does not focus on situations involving a need for rapid action.

*Id.* at 357, 97 S.Ct. 619 (citation omitted).[13]

After dispelling several other exceptions that the government proposed, the Court concluded that the warrantless search of the cottage was unreasonable and violated the Fourth Amendment.

At first blush, *G.M. Leasing* is distinguishable from the case before us because the search of the cottage in that case was conducted without a warrant. Here, the revenue officers searched Defendant's home only after they issued an administrative warrant under the jeopardy assess-

---

collection thereof by levy shall be lawful without regard to the 10–day period provided in this section.

(b) Seizure and sale of property.

The term 'levy' as used in this title includes the power of distraint and seizure by any means. .... A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize

and sell such property or rights to property (whether real or personal, tangible or intangible).

**13.** The government did not rely on a separate part of 26 U.S.C. § 6331 which authorized expedited jeopardy assessments much like those at issue here. However, the Court later rejected the government's argument that exigent circumstances justified the warrantless search. *Id.* at 358–59, 97 S.Ct. 619.

ment rules of section 3 of the General Enforcement Chapter. Ind.Code § 6–8.1–5–3. Generally, an assessment qualifies as a jeopardy assessment under this section if the Department determines that a taxpayer "intends to quickly leave the state, remove his property from the state, conceal his property in the state, or do any other act that would jeopardize the collection of those taxes . . . ." This initial step addresses the concerns the *G.M. Leasing* Court expressed about warrantless searches under 26 U.S.C. § 6331.

Indiana revenue officers do not enjoy the kind of unfettered discretion present in *G.M. Leasing* because the Department may issue jeopardy assessments only under statutorily prescribed circumstances. These statutory standards relate directly to exigent circumstances and ensure that a jeopardy assessment will be made only when the taxpayer "intends to quickly leave the state, remove his property from the state, conceal his property in the state, or do any other act that would jeopardize the collection of those taxes. . . ." Ind. Code § 6–8.1–5–3. Because the jeopardy warrant provisions of section 3 of the General Enforcement Chapter, Ind.Code 6–8.1–5–3, address the concerns of the *G.M. Leasing* Court, we hold that a search of a home pursuant to a jeopardy warrant under section 3 provision will generally be reasonable for Fourth Amendment purposes.

A close look at the *CSET* collection proceedings shows, however, that the protections generally inherent in Indiana's assessment scheme are not present when revenue officers search a home under the CSET. As previously mentioned, section 13 of the CSET Chapter, Ind.Code § 6–7–3–13, states that *all* CSET assessments are jeopardy assessments, and as jeopardy assessments the Department is empowered to issue jeopardy warrants to collect them.

Therefore, once the Department makes a CSET assessment, revenue officers enjoy carte blanche to issue jeopardy warrants and levy on private premises. Section 13 of the CSET Chapter essentially states that CSET assessments create a *per se* exigent circumstance and grants revenue officers complete discretion to enter the taxpayer's home.

We therefore conclude that both of the factors that led the *G.M. Leasing* Court to conclude that a search of a home under 26 U.S.C. § 6331 was unreasonable are present in searches of homes conducted pursuant to jeopardy tax warrants issued to collect Indiana CSET assessments. First, in both instances officers have boundless discretion to intrude upon the privacy of the home. Because section 13 of the CSET Chapter states that all CSET assessments are jeopardy assessments, Ind.Code § 6–7–3–13, the only limit placed on revenue officers' ability to search homes is the requirement that they fill out their own warrant. *See* Ind.Code § 6–8.1–5–3 ("the department may issue . . . . a jeopardy tax warrant . . ."). Second, *G.M. Leasing* determined that the exigency of the circumstances did not justify a warrantless entry into the cottage. The search of Defendant's home was based on even less exigency. In *G.M. Leasing,* the taxpayer whose conduct initiated the seizures was a *fugitive.* The IRS knew that his family members were attempting to hide assets and were alone with documents inside the cottage. There is nothing in the present record to suggest that Defendant was about to abscond, hide assets, or destroy documents. In fact, the record shows that Defendant was arrested when he returned to his apartment during the search. This lack of evidence as to the exigency of the circumstances is due at least in part to the fact that the Department was not required to establish exigency under the CSET collec-

tion procedures. Because of the similarities between this case and *G.M. Leasing,* we conclude that the search of Defendant's home under Indiana Code §§ 6–7–3–13 and 6–8.1–5–3 was unreasonable for the same reasons that the search of the taxpayer's cottage under 26 U.S.C. § 6331 was unreasonable in *G.M. Leasing.*

■■■ *G.M. Leasing*—which was a civil case—only addressed the constitutionality of the search and did not determine whether the records would have to be suppressed during a subsequent criminal prosecution. 429 U.S. at 359, 97 S.Ct. 619.[14] However, under normal Fourth Amendment principles, evidence obtained in the course of an illegal search is not admissible in a subsequent criminal proceeding. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). For example,

> When applied, the [fruit of the poisonous tree] doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights.

*State v. Farber,* 677 N.E.2d 1111, 1114 (Ind.Ct.App.1997) (Rucker, J.), *transfer denied.* We believe that the Supreme Court's statements in *G.M. Leasing* that "[t]he suppression issue, as to the books and records, obviously is premature and may be considered if and when proceedings arise in which the Government seeks to use the documents or information obtained from them" is simply a statement of the Court's limited jurisdiction given the posture of that case, and was not intended to call into question the elementary application of the principles of *Mapp* or *Wong Sun. See State v. Hinchey,* 220 Neb. 825, 374 N.W.2d 14 (1985) (relying on *G.M. Leasing* to exclude evidence in a criminal case). We therefore hold that the trial court should have suppressed evidence stemming from the search of Defendant's home under the jeopardy tax warrant.[15]

■■■ The Court of Appeals concluded that the fruit of poisonous tree doctrine would preclude the State from introducing evidence obtained in the CSET search. *See Adams v. State,* 726 N.E.2d 390, 393 (Ind.Ct.App.2000). It reached this conclusion because it determined that the exclusionary rule applied to the CSET. *See id.*[16] However, the exclusionary rule's application to the CSET does not affect the suppression of evidence in Defendant's *criminal* trial. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In a criminal trial, evidence must

---

**14.** In refusing to address this issue, the Court cited two cases that held that the issue of whether evidence seized in tax collections could be used in a subsequent criminal prosecution was not ripe for adjudication in a civil action concerning the tax. *See id.* (citing *Meister v. United States,* 397 F.2d 268 (3d Cir.1968), and *Hill v. United States,* 346 F.2d 175 (9th Cir.1965), *cert denied* ).

**15.** The State argues that the cocaine could be introduced under good faith exception to the exclusionary rule found in Indiana Code

§ 35–37–4–5 and *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, both the statute and *Leon* require that the warrant on which the government relies to be reviewed by a neutral and detached magistrate. As we discussed *supra,* the search was conducted pursuant to a tax warrant that was never reviewed by a judge.

**16.** We address this argument—and come to the opposite conclusion—in the companion case, *Dep't. of Revenue v. Adams,* 762 N.E.2d 728.

be suppressed if it stems from an unconstitutional search. Therefore, our analysis is focused on whether the search of Defendant's home was unconstitutional. Having found it so, we conclude that the fruits of this search must be suppressed at Defendant's trial.

Our holding that the search of Defendant's home was unreasonable is a limited one. In this case, government officers intruded upon the privacy of a home. Our conclusion that this intrusion was unreasonable does not affect the Department's ability to seize assets found in less private contexts. In fact, *G.M. Leasing* endorsed the government's power to institute tax liens, seize assets found in public places, and take other basic measures to collect taxes so long as they do not involve warrantless intrusions into the home.[17] Moreover, our holding does not affect the Department's ability to collect taxes under the General Enforcement Chapter using jeopardy assessments and jeopardy warrants in most circumstances. The jeopardy warrant procedures both cabin revenue officers' discretion and provide that such warrants will not be issued except in exigent circumstances. We conclude today that execution of jeopardy warrants based only on a statutory declaration in the CSET Chapter that the CSET is a jeopardy assessment is unreasonable. This con-

clusion does not impinge on the general functioning of jeopardy warrants based on a finding of exigency.

*Conclusion*

Having previously granted transfer, we now reverse the decision of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

---

**17.** The *G.M. Leasing* Court was only concerned with the intrusion into the privacy of the cottage, and not the actual levies on property. It acknowledged that the government could *seize* property without obtaining a warrant. *Id.* at 354, 97 S.Ct. 619. That is to say,

While the Government is indeed authorized to effect a seizure of property without obtaining court authorization, it can not constitutionally enter private premises to search for property subject to such a seizure without a prior judicial determination that such an intrusion is justified. The *G.M. Leasing* decision was grounded on the need to protect the reasonable expectations of privacy of the occupants of the premises.

Thus, a tax seizure may still be effected without judicial intervention if the property to be seized is found in a public place. But, under *G.M. Leasing*, if it is necessary for the Government to enter private premises to effect the seizure, it must first obtain a court order authorizing such entry. *Matter of Campbell*, 761 F.2d 1181 (6th Cir. 1985). *See also United States v. Shriver*, 645 F.2d 221, 222 (4th Cir.1981) ("The warrant requirement, however, has to do with entry upon private property and nothing at all to do with the reasonableness or possible unreasonableness of a contemplated levy upon private property in aid of tax collection.").